******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## KEITH TONI ET AL. *v.* PROGRESSIVE DIRECT INSURANCE COMPANY ET AL.
## (AC 48119)

Elgo, Moll and Suarez, Js.

*Syllabus*

The plaintiffs appealed from the trial court's judgment for the defendant insurers, P Co. and O Co., on the plaintiffs' action seeking to recover uninsured motorist coverage pursuant to automobile insurance policies issued by the defendants. The plaintiffs sustained injuries when the vehicle in which they were passengers, a rented vehicle driven by T, was rear-ended by a motor vehicle operated by an underinsured motorist. T was the named insured on the policy issued by P Co., and the named insured on the policy issued by O Co. was S Co., a company of which the plaintiff C was president. The plaintiffs claimed that the court improperly concluded that they were not entitled to coverage under either policy. *Held*:

The trial court improperly concluded that the plaintiffs were not insureds entitled to uninsured motorist coverage pursuant to the insurance policy issued by P Co., as, although pursuant to the clear and unambiguous terms of the P Co. policy they were not insured persons for purposes of uninsured motorist coverage, they were occupants of a motor vehicle to which the bodily injury liability coverage of the P Co. policy applied, namely, the motor vehicle rented by T, such that the plaintiffs were entitled to coverage pursuant to statute (§ 38a-336 (a) (1) (A)) and the corresponding state regulation (§ 38a-334-6 (a)).

The trial court properly concluded that the plaintiffs were not insureds entitled to uninsured motorist coverage pursuant to the insurance policy issued by O Co., as the uninsured motorist endorsement in the policy was clear and unambiguous in defining an insured when the named insured was a corporation, and the plaintiffs did not qualify as insureds because T's rented motor vehicle was not a covered auto under the policy issued to S Co., nor was it rented to replace any motor vehicles listed in the policy.

Argued January 15—officially released April 14, 2026

*Procedural History*

Action to recover uninsured motorist benefits allegedly due under certain automobile policies issued by the defendants, brought to the Superior Court in the judicial district of Fairfield, where the named plaintiff et al. withdrew their claims; thereafter, the court, *Tyma, J.*, granted the named defendant's motion to bifurcate the issue of coverage and the issues of liability and damages; subsequently, the case was tried to the court, *Riley, J.*,

on the issue of coverage; judgment for the defendants, from which the plaintiff Gus Curcio, Sr., et al. appealed to this court. *Reversed in part*; *further proceedings*.

*Michael E. Skiber*, for the appellants (plaintiff Gus Curcio, Sr., et al.).

*Ryan J. Roberts*, with whom, on the brief, was *John W. Cannavino, Jr.*, for the appellee (named defendant).

*Jack G. Steigelfest*, for the appellee (defendant Ohio Security Insurance Company).

*Opinion*

MOLL, J. The plaintiffs Gus Curcio, Sr., and Julia Kish[1] appeal from the judgment of the trial court, rendered following a bench trial, in favor of the defendants, Progressive Direct Insurance Company (Progressive) and Ohio Security Insurance Company (Ohio Security). On appeal, the plaintiffs claim that the court improperly concluded that they were not insureds entitled to uninsured motorist coverage[2] pursuant to automobile insurance policies issued by the defendants. We reverse in part the judgment of the trial court.

The following undisputed facts, as stipulated to by the parties, as found by the trial court, or as gleaned from the record, and procedural history are relevant to our resolution of this appeal. On October 12, 2019, in Boca Raton, Florida, the plaintiffs were passengers in a motor vehicle operated by Keith Toni, which motor vehicle he had rented, when the rented motor vehicle was rear-ended by a motor vehicle operated by an underinsured

---

[1] The original plaintiffs who filed the present action are Gus Curcio, Sr., Julia Kish, Keith Toni, and Lillie Toni in her individual capacity and on behalf of Vinci Toni and Gia Toni. All of the original plaintiffs, except for Curcio, Sr., and Kish, withdrew their claims prior to trial. In the interest of simplicity, we refer in this opinion to Curcio, Sr., and Kish collectively as the plaintiffs.

[2] All references in this opinion to uninsured motorist coverage encompass underinsured motorist coverage as well. See *Russbach* v. *Yanez-Ventura*, 213 Conn. App. 77, 81 n.5, 277 A.3d 874, cert. denied, 345 Conn. 902, 282 A.3d 465 (2022).

motorist. The plaintiffs sustained injuries as a result of the accident. The underinsured motorist's insurer later denied coverage to the plaintiffs.

At the time of the collision, there was a Connecticut automobile insurance policy in effect issued by Progressive to Toni, which included uninsured motorist coverage in the amounts of $100,000 per person and $300,000 per accident per vehicle (Progressive policy). Additionally, at the time of the collision, there was an automobile insurance policy in effect issued by Ohio Security to Success, Inc., which included a Connecticut uninsured motorist endorsement providing uninsured motorist coverage in the amount of $1 million per accident (Ohio Security policy). Curcio, Sr., is the president of Success, Inc.

On February 18, 2021, the plaintiffs commenced the present action against the defendants. In their amended complaint filed as of right on March 2, 2021, the plaintiffs alleged that they were insureds entitled to uninsured motorist coverage under the Progressive policy and the Ohio Security policy, but the defendants refused to make payments to them.[3] The defendants filed separate answers in which they denied the plaintiffs' allegations that the plaintiffs were insureds entitled to uninsured motorist coverage under the respective policy issued by each defendant.[4]

On February 2, 2023, Progressive filed a motion to bifurcate the issue of whether the plaintiffs were entitled to uninsured motorist coverage under the Progressive policy from the issues of liability and damages. On February 14, 2023, the plaintiffs filed an objection. On March 13, 2023, the trial court, *Tyma, J.*, ordered that "[t]he trial of the coverage issues involving [the defendants]

---

[3] Counts five and six of the amended complaint set forth Curcio, Sr.'s allegations against Progressive and Ohio Security, respectively, whereas counts seven and eight set forth Kish's allegations against Progressive and Ohio Security, respectively. Counts one through four delineated claims asserted by former parties who withdrew their claims prior to trial. See footnote 1 of this opinion.

[4] The defendants also asserted several special defenses, which the plaintiffs denied.

are bifurcated to the extent that the contractual coverage issues will be determined first.''

The bifurcated coverage issues were tried to the court, *Riley, J.*, on October 17, 2023. Among the exhibits admitted in full into evidence were the Progressive policy and the Ohio Security policy. Additionally, the parties submitted joint stipulations of facts. On November 17, 2023, the parties filed posttrial briefs. On September 27, 2024, the court issued a memorandum of decision rendering judgment in favor of the defendants on counts five through eight of the plaintiffs' amended complaint; see footnote 3 of this opinion; concluding that the plaintiffs were not insureds entitled to uninsured motorist coverage pursuant to the Progressive policy or the Ohio Security policy. This appeal followed. Additional facts and procedural history will be set forth as necessary.

Before turning to the plaintiffs' claims, we set forth the following standard of review applicable insofar as the claims require us to construe the terms of the Progressive policy or the Ohio Security policy. "It is well established that [a]n insurance policy is to be interpreted by the same general rules that govern the construction of any written contract . . . . In accordance with those principles, [t]he determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. . . . The determination of whether an insurance policy is ambiguous is a matter of law for the court to decide. . . . Furthermore, [i]t is a basic principle of insurance law that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters . . . . [T]he policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point

of view." (Citations omitted; internal quotation marks omitted.) *Russbach* v. *Yanez-Ventura*, 213 Conn. App. 77, 104, 277 A.3d 874, cert. denied, 345 Conn. 902, 282 A.3d 465 (2022).

I

The plaintiffs first claim that the trial court improperly concluded that they were not insureds entitled to uninsured motorist coverage pursuant to the Progressive policy. For the reasons that follow, we agree.[5]

The following additional facts and procedural history are relevant to our resolution of this claim. The Progressive policy contains separate sections delineating liability coverage and uninsured motorist coverage. With respect to uninsured motorist coverage, the Progressive policy states that Progressive "will pay for damages that an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury: 1. sustained by an insured person; 2. caused by an accident; and 3. arising out of the ownership, maintenance or use of an uninsured motor vehicle." (Emphasis omitted.) For purposes of uninsured motorist coverage, the Progressive policy defines an "'[i]nsured person'" to mean: "[1] you,[6] a relative, or a rated resident; [2] any person while operating a covered auto[7] with the permission of you, a relative, or a rated

---

[5] The plaintiffs also assert that the court improperly failed to conclude that Progressive did not obtain a statutory waiver of coverage. This separate claim is unreviewable because the plaintiffs have raised it for the first time on appeal. See *United Concrete Products, Inc.* v. *NJR Construction, LLC*, 207 Conn. App. 551, 579, 263 A.3d 823 (2021) ("[o]ur appellate courts, as a general practice, will not review claims made for the first time on appeal" (internal quotation marks omitted)). Even if the plaintiffs properly had raised this claim on appeal, it would be unnecessary for us to address it on the merits in light of our resolution of the plaintiffs' coverage claim in their favor.

[6] The general definitions section of the Progressive policy defines "'[y]ou'" to mean "a person shown as a named insured on the declarations page [that is, Toni]; and . . . the spouse of a named insured if residing in the same household at the time of the loss." (Emphasis omitted.)

[7] The general definitions section of the Progressive policy defines "'[c]overed auto'" to mean "[1] any auto or trailer shown on the

resident; [3] any person occupying, but not operating, a covered auto; and [4] any person who is entitled to recover damages covered by [the section of the policy regarding uninsured motorist coverage] because of bodily injury sustained by a person described in [1], [2] or [3] above." (Emphasis omitted; footnotes added.) The Progressive policy further provides: "If you have purchased liability, comprehensive, or collision coverage, then those coverages are also provided when you rent a private passenger automobile. The coverage limits and deductibles will be the same as those listed for liability, comprehensive, or collision coverage on [the] declarations page."

In their posttrial brief, the plaintiffs did not analyze whether they were " '[i]nsured person[s]' " as defined by the Progressive policy for purposes of uninsured motorist coverage. Instead, the plaintiffs contended that (1) the Progressive policy extended liability coverage to Toni's rented motor vehicle and (2) "[a]s a matter of public policy, as reflected and mandated in [Connecticut's] statut[ory] and regulatory scheme, the plaintiffs are protected persons entitled to the benefits of the uninsured motorist coverage under the Progressive policy because the plaintiffs, who were injured by an uninsured motorist, were occupants in the vehicle [Toni] was driving at the time of the accident." In particular, the plaintiffs relied on General Statutes § 38a-336 (a) (1) (A) and § 38a-334-6 (a) of the Regulations of Connecticut State Agencies (regulations) to maintain that it is the public policy in Connecticut "to protect occupants in vehicles operated by an insured who are injured by an uninsured tortfeasor." In its posttrial brief, Progressive argued that (1) the plaintiffs were not " '[i]nsured person[s]' " for purposes of uninsured motorist coverage under the clear and unambiguous terms of the Progressive policy and (2) its rejection of the plaintiffs' claim for uninsured motorist benefits under the policy did not contravene the legislative purpose of § 38a-336.

declarations page for the coverages applicable to that auto or trailer; [2] any additional auto; [3] any replacement auto; or [4] a trailer owned by you." (Emphasis omitted.)

In rendering judgment in Progressive's favor on counts five and seven of the plaintiffs' amended complaint, the court first concluded that the Progressive policy sets forth "a clear and unambiguous definition of who is an insured [person for purposes of uninsured motorist coverage] under the policy" and that, on the basis of the evidence in the record, "the plaintiffs simply [did] not meet the definition of . . . insured [persons] . . . ." The court also acknowledged arguments raised by the plaintiffs "that excluding them from [uninsured] motorist benefits would violate public policy and that [Toni] . . . reasonably concluded that his passengers, including the plaintiffs, were covered." Observing that, " '[i]n an insurance policy, an exclusion is a provision which eliminates coverage when, were it not for the exclusion, coverage would have existed,' " the court determined that the plaintiffs were not excluded from coverage but rather, as a threshold matter, they were not covered for purposes of uninsured motorist coverage under the Progressive policy.

On appeal, the plaintiffs do not challenge the court's conclusion that, pursuant to the clear and unambiguous terms of the Progressive policy, they were not " '[i]nsured person[s]' " for purposes of uninsured motorist coverage. Instead, the plaintiffs contend that (1) Toni's rented motor vehicle was covered by the Progressive policy and (2) "as passengers and occupants [of Toni's rented motor vehicle on the day of the accident], [they] are legally entitled to mandated uninsured motorist coverage under the . . . policy by statute and regulation," citing § 38a-336 (a) (1) (A) and § 38a-334-6 (a) of the regulations, as well as public policy considerations. Progressive argues that the Progressive policy comports with the statutory and regulatory scheme governing uninsured motorist coverage, which does not support the plaintiffs' claim for uninsured motorist coverage.[8] We conclude that the plaintiffs were entitled by law to uninsured motorist coverage pursuant to the Progressive policy.

---

[8] Although Progressive discusses § 38a-336 (a) (1) (A) in its appellate brief, it does not address the plaintiffs' analysis regarding § 38a-334-6 (a) of the regulations.

Insofar as resolving the plaintiffs' claim requires us to interpret the statutory and regulatory scheme governing uninsured motorist coverage, we apply plenary review. See *Farmers Texas County Mutual* v. *Hertz Corp.*, 282 Conn. 535, 541, 923 A.2d 673 (2007) ("[b]ecause the interpretation of . . . [statutes and] regulations presents a question of law, our review is plenary" (internal quotation marks omitted)).

"Our state law requires all motor vehicle owners to maintain a minimum amount of automobile liability insurance coverage. General Statutes § 38a-335 (a). The legislature understood that some motorists will not comply with this law, however. Thus, to protect properly insured motorists from the negligence of financially irresponsible motorists, our state law expressly provides that every automobile insurance policy must provide its insured with a minimum amount of uninsured and underinsured motorist coverage as provided for in [General Statutes] § 14-112 (a)." (Internal quotation marks omitted.) *Curley* v. *Phoenix Ins. Co.*, 220 Conn. App. 732, 757–58, 299 A.3d 1133, cert. denied, 348 Conn. 914, 303 A.3d 260 (2023).

Section 38a-336 (a) (1) (A) provides: "Each automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages because of bodily injury, including death resulting therefrom, from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages."

"Section 38a-334-6 of the [regulations] sets forth the minimum provisions for [uninsured and] underinsured motorist coverage and the permitted exclusions and reductions to such coverage." *Curley* v. *Phoenix Ins. Co.*,

supra, 220 Conn. App. 758–59. "Regulations issued by the insurance commissioner to implement the statutes governing uninsured . . . motorist coverage are presumed valid and have the force and effect of a statute." (Internal quotation marks omitted.) *Vitti* v. *Allstate Ins. Co.*, 245 Conn. 169, 182, 713 A.2d 1269 (1998). Section 38a-334-6 (a) of the regulations provides: "Coverage. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured or underinsured motor vehicle. *This coverage shall insure the occupants of every motor vehicle to which the bodily injury liability coverage applies.* 'Uninsured motor vehicle' includes a motor vehicle insured against liability by an insurer that is or becomes insolvent." (Emphasis added.) Thus, "[a]ll persons occupying the vehicle insured in the policy are . . . covered if injured while occupying the vehicle." J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (4th Ed. 2010) § 2.8, p. 236.

"Our state has consistently maintained a strong public policy favoring uninsured motorist coverage . . . since 1967 . . . . Specifically, that public policy dictates that every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured motorist [responsible for the insured's injury] had maintained a policy of liability insurance. . . . In short, the legislature and [our Supreme Court] have a well established and deliberate policy in favor of insuring the risk of loss resulting from the negligence of uninsured and underinsured motorists.

"The rationale behind this policy is to reward those who obtain insurance coverage for the benefit of those they might injure. . . . We have supported coverage arrangements that have furthered the important public policy goals of the uninsured motorist statute. . . . And in support of the broad, remedial purpose of the uninsured

motorist statute . . . [our Supreme Court has] stated that an insurer may [not] circumvent th[at] public policy . . . .” (Emphasis omitted; internal quotation marks omitted.) *Curley* v. *Phoenix Ins. Co.*, supra, 220 Conn. App. 760–61.

In *Middlesex Ins. Co.* v. *Quinn*, 225 Conn. 257, 622 A.2d 572 (1993), our Supreme Court explained that § 38a-336 “does not require automobile insurance policies to provide underinsured motorist benefits to any particular class or group of insureds. . . . The legislature did not specifically define ‘insured’ in the context of underinsured motorist coverage. Rather, the statute requires that underinsured motorist coverage must be provided ‘for the protection of persons insured thereunder.’ . . . Thus, ‘persons insured’ in this statute refers to persons specified as insureds in the liability portion of the policy.” (Citations omitted; emphasis omitted; footnote omitted.) Id., 264. In a footnote, our Supreme Court continued: “Section 38a-334-6 (a) of the [regulations] does, however, require uninsured motorist coverage for occupants of an insured motor vehicle . . . . In light of the fact that occupants of a motor vehicle would not be insured under the driver’s policy for automobile liability, § 38a-334-6 (a) [of the regulations] requires protection for this otherwise unprotected group. Although occupants of a vehicle may have their own liability coverage, which would entitle them to uninsured motorist benefits . . . the insurance commissioner has designated ‘occupants’ as a class of persons who may receive more extensive uninsured motorist coverage.”[9] (Citation omitted.) Id., 264 n.9; see also *Harvey* v. *Travelers Indemnity Co.*, 188 Conn. 245, 252, 449 A.2d 157 (1982) (construing second sentence of what is now § 38a-334-6 (a) of the regulations

[9]The defendant in *Quinn*, who was claiming underinsured motorist benefits pursuant to an automobile insurance policy issued to his father, “was not occupying an automobile insured under the policy at the time of his injury. He was not entitled, therefore, to underinsured motorist benefits as an occupant of an insured automobile.” *Middlesex Ins. Co.* v. *Quinn*, supra, 225 Conn. 262 n.5; see also id., 264 n.9 (“had the defendant been an occupant of an automobile insured under the . . . policy, [the plaintiff insurer] concedes that coverage would be mandated”).

"to include coverage for all occupants—whether insureds or not—of insured motor vehicles").

In the present action, it is undisputed that the plaintiffs were occupants of Toni's rented motor vehicle at the time of the accident. Under the express terms of the Progressive policy, the bodily injury liability coverage provided by the policy extends to motor vehicles rented by Toni.[10] By way of summary, at the time of the accident on October 12, 2019, the plaintiffs were occupants of a motor vehicle to which the bodily injury liability coverage of the Progressive policy applied such that, pursuant to § 38a-334-6 (a) of the regulations, Progressive was required by law to extend uninsured motorist coverage to them in connection with the accident.[11] Accordingly,

---

[10] Portions of the rental agreement that Toni executed in connection with the rented motor vehicle were admitted in full into evidence. In their appellate brief, relying on the rental agreement documents in evidence, the plaintiffs represent that Toni "had declined rental coverage and deferred to [the Progressive] policy for coverage on the rented [motor] vehicle." Progressive does not raise any argument on appeal concerning the rental agreement, beyond contending that the rental company was the owner of the rented motor vehicle. Because no claims have been briefed on appeal predicated on the rental agreement, we need not discuss it further.

[11] One of the definitions of an " '[i]nsured person' " for purposes of uninsured motorist coverage in the Progressive policy is "any person occupying, but not operating, a covered auto . . . ." (Emphasis omitted.) The plaintiffs do not claim that Toni's rented motor vehicle satisfied the Progressive policy's definition of a " 'covered auto.' " See footnote 7 of this opinion. As we have concluded, however, the plaintiffs were entitled by law to uninsured motorist coverage under the Progressive policy as occupants of Toni's rented motor vehicle. Insofar as the terms of the Progressive policy are narrower than what is mandated by law, the broader coverage required by law controls. See General Statutes § 38a-338 ("[p]olicies affording bodily injury liability, property damage liability and uninsured motorist coverages to which the provisions of sections 38a-334 to 38a-336a, inclusive, and 38a-340 apply shall be deemed to provide insurance under such coverages in accordance with regulations adopted pursuant to section 38a-334"); *Middlesex Ins. Co.* v. *Quinn*, supra, 225 Conn. 268 ("[a]n insurer cannot limit otherwise mandated underinsured motorist coverage by labeling a forbidden exclusion as a definition"); J. Berk & M. Jainchill, supra, § 1.2, pp. 19–20 ("An insurance policy must include all statutorily required provisions. . . . An insurance contract will be read to include provisions that the law requires be included and exclude provisions that the law prohibits. An

we conclude that the court incorrectly determined that the plaintiffs were not entitled to uninsured motorist coverage under the Progressive policy, and, therefore, the court improperly rendered judgment in Progressive's favor on counts five and seven of the plaintiffs' amended complaint.[12]

## II

The plaintiffs next claim that the trial court improperly concluded that they were not insureds entitled to

insurance policy issued in Connecticut is subject to the existing statutory provisions and those provisions are read into the policy just as if the policy had incorporated that statutory requirement as an express provision." (Citations omitted.)); see also *Lollar* v. *Progressive Direct Ins. Co.*, Docket No. CV-19-6108715-S, 2019 WL 5856622, *1−2 (Conn. Super. October 22, 2019) (concluding that automobile insurance policy's exclusion of uninsured motorist coverage for rented motor vehicles was unenforceable when policy extended liability coverage to rented motor vehicles and such exclusion was not authorized by state statute or agency regulation).

[12] Progressive argues that *Smith* v. *Nationwide Mutual Ins. Co.*, 214 Conn. 734, 573 A.2d 740 (1990), militates against the conclusion that the plaintiffs are entitled to uninsured motorist coverage under the Progressive policy. We disagree. In *Smith*, while the plaintiff was a passenger in an automobile owned by the driver, she sustained injuries when the automobile was involved in a one car accident. Id., 736. The plaintiff pursued a claim for underinsured motorist benefits under an insurance policy issued by the defendant insurer to the driver's father. Id. An arbitration panel concluded that the plaintiff was not entitled to recover under the policy, and upon application, the trial court confirmed the arbitration award. Id., 735. The plaintiff appealed to this court, whereupon our Supreme Court transferred the appeal to itself. Id. On appeal, the plaintiff claimed that the driver was an insured for liability purposes under the policy while operating the automobile involved in the accident, ergo she was entitled to uninsured motorist benefits as an occupant of the vehicle. Id., 736−37. Our Supreme Court rejected that claim, concluding the liability portion of the policy did not cover the automobile involved in the accident, and, therefore, under the circumstances present, the driver was not an insured for liability purposes pursuant to the policy. Id., 737. Our Supreme Court further concluded that the plaintiff did not satisfy any of the definitions of a " 'covered person' " for purposes of uninsured motorist coverage under the policy and rejected her claim that said definitions were, in effect, improper exclusions. Id., 737−41.

Unlike the plaintiff in *Smith*, the plaintiffs in the present action were occupants of a motor vehicle insured for bodily injury liability coverage

uninsured motorist coverage pursuant to the Ohio Security policy. We disagree.

The following additional facts and procedural history are relevant to our disposition of this claim. The uninsured motorist endorsement of the Ohio Security policy provides that Ohio Security "will pay all sums the insured is legally entitled to recover as compensatory damages from the owner or driver of an uninsured motor vehicle or underinsured motor vehicle. The damages must result from bodily injury sustained by the insured caused by an accident. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the uninsured motor vehicle or underinsured motor vehicle." (Internal quotation marks omitted.) For purposes of uninsured motorist coverage, the definition of an "[i]nsured" under the Ohio Security policy depends on the classification of the policy's named insured, that is, Success, Inc. The endorsement provides as follows:

"B. Who Is An Insured

"If the [n]amed [i]nsured is designated in the [d]eclarations as:

"1. An individual, then the following are insureds:

"a. The [n]amed [i]nsured and any family members.

"b. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.

"c. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured.

"2. A partnership, limited liability company, corporation or any other form of organization, then the following are insureds:

"a. Anyone occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be

by the Progressive policy, and, therefore, they were entitled by law to uninsured motorist coverage under the policy. Thus, *Smith* is inapposite.

out of service because of its breakdown, repair, servicing, loss or destruction.

"b. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured." (Internal quotation marks omitted.)

In their posttrial brief, relying on *Ceci* v. *National Indemnity Co.*, 225 Conn. 165, 622 A.2d 545 (1993), and *Hansen* v. *Ohio Casualty Ins. Co.*, 239 Conn. 537, 687 A.2d 1262 (1996), the plaintiffs asserted that the uninsured motorist endorsement was ambiguous in defining an "[i]nsured," which ambiguity was to be construed in favor of extending uninsured motorist coverage to them under the policy. Additionally, the plaintiffs maintained that § B.2.b of the endorsement's definition of an "[i]nsured" was "at a minimum misleading, confusing, and ambiguous and appear[ed] to extend to any person with a bodily injury," including themselves. In its posttrial brief, Ohio Security argued that the plaintiffs were not "insureds" under the clear and unambiguous language of the endorsement and, thus, were not entitled to uninsured motorist coverage pursuant to the Ohio Security policy.

In rendering judgment in Ohio Security's favor on counts six and eight of the plaintiffs' amended complaint, the court concluded that (1) the uninsured motorist endorsement is clear and unambiguous in defining an "[i]nsured" when, as here, the named insured was a corporation and (2) the plaintiffs did not qualify as "insureds" because Toni's rented motor vehicle neither was a "covered auto" under the policy nor was rented to replace any motor vehicles listed in the policy. Additionally, the court determined that the plaintiffs' reliance on *Ceci* and *Hansen* was misplaced.

On appeal, the plaintiffs claim that the court improperly concluded that the uninsured motorist endorsement is clear and unambiguous in defining an "[i]nsured." The plaintiffs assert that, pursuant to the reasoning of *Ceci* and *Hansen*, the endorsement's definition of

an "[i]nsured" is ambiguous because it "uses language oriented toward individuals when the named insured is Success, Inc., a corporation." Alternatively, acknowledging that Success, Inc., is a "corporate entity" such that the definition of an "[i]nsured" set forth in § B.2 of the endorsement is applicable, the plaintiffs contend that the language of § B.2.b is "is confusing and ambiguous [and] seemingly covers anyone with a bodily injury," including themselves.[13] We are not persuaded.

We first address the plaintiffs' reliance on *Ceci* and *Hansen*. In *Ceci*, the plaintiff sustained injuries as a pedestrian when he was struck by an underinsured motorist. *Ceci* v. *National Indemnity Co.*, supra, 225 Conn. 166. At that time, there was a commercial automobile insurance policy in effect issued by the defendant insurer to a corporation operated by the plaintiff's family. Id., 166–67. The policy included an uninsured motorist endorsement, which provided as follows:

"D. WHO IS INSURED.

"1. You or any family member.

"2. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction." (Emphasis omitted; internal quotation marks omitted.) Id., 171.

Additionally, the policy defined "[y]ou" as "the person or organization shown as the named insured in ITEM ONE of the declarations [that is, the corporation]"; (internal quotation marks omitted) id., 170; and the endorsement defined a "[f]amily member" as "a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child." (Emphasis omitted; internal quotation marks omitted.) Id., 171.

The plaintiff submitted a claim for underinsured motorist benefits to an arbitration panel, which denied

---

[13] Assuming that the definition of an "[i]nsured" in the uninsured motorist endorsement is clear and unambiguous, the plaintiffs do not challenge the court's conclusion that neither of them satisfied that definition.

the claim. Id., **167**. Upon application, the trial court confirmed the arbitration award. Id., **167–68**. This court affirmed the trial court's judgment, and our Supreme Court granted certification. Id., **166, 168**.

On appeal, our Supreme Court reversed this court's judgment, concluding that the defendant's policy was ambiguous as a result of the inclusion of the language in the uninsured motorist endorsement regarding "'family members.'" Id., **173–76**. As our Supreme Court explained: "An endorsement that specifically added coverage for 'family members,' as did [the policy], would reasonably be understood as providing uninsured motorist insurance for members of the [plaintiff's] family independent of whether they were occupying a covered automobile at the time of injury. . . . The language relating to 'family members' in a policy insuring a corporation was not required. The defendant could have omitted [§ D.1] of the . . . endorsement . . . . Without this section, there would have been no ambiguity. . . . Because corporations do not have families, uninsured motorist endorsements containing family member language should not be appended to business automobile liability insurance policies. If they are, then, in keeping with the consumer oriented spirit of the rules of insurance policy construction, the claimed ambiguity should be construed from the standpoint of the reasonable layperson in the position of the insured and not according to the interpretation of trained underwriters. . . . By inserting a family member provision in a business policy, the defendant has left the [plaintiff and his family] in the unenviable position of having to divine the meaning and purpose of the family member language in the context of the policy. This is precisely the problem that the rules of insurance policy construction were designed to avoid. . . . The defendant could have clarified or omitted the problematic language to provide notice to the [plaintiff and his family] of the precise nature of the coverage that was being purchased.[14] It failed to do so, and instead highlighted

_____

[14] Our Supreme Court observed that "the defendant could have alerted the insured to the lack of personal coverage under the policy so that the [plaintiff and his family] could have pursued alternate avenues for

these significant changes to the insured, thereby creating the ambiguity in the policy." (Citations omitted; footnote added; footnotes omitted.) Id. Our Supreme Court also rejected an argument by the defendant that would have rendered § D.1 meaningless. Id., 175.

In *Hansen*, which our Supreme Court characterized as a "sequel" to *Ceci*; *Hansen* v. *Ohio Casualty Ins. Co.*, supra, 239 Conn. 543; the decedent was killed when the snowmobile that he was operating collided with an underinsured motor vehicle. Id., 540. At that time, there was a commercial automobile insurance policy in effect issued by the defendant insurer to a corporation of which the plaintiff and the decedent were the sole shareholders. Id., 539–40. The policy's uninsured motorist endorsement provided that "[w]e will pay all sums the insured is legally entitled to recover as compensatory damages from the owner or driver of an uninsured motor vehicle. The damages must result from bodily injury sustained by the insured caused by an accident." (Emphasis omitted; internal quotation marks omitted.) Id., 541. The endorsement defined an "[i]nsured" as follows:

"B. WHO IS AN INSURED

"1. You.

"2. If you are an individual, any family member.

"3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.

"4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured." (Emphasis omitted; internal quotation marks omitted.) Id.

---

coverage of family members who could be injured by an underinsured motorist other than while driving in one of the . . . corporate vehicles. For example, the insurance policy could have identified the corporate officers . . . or the sole stockholder . . . as a 'designated insured.' This would have easily removed any ambiguity." *Ceci* v. *National Indemnity Co.*, supra, 225 Conn. 174.

In addition, the policy defined (1) "you" as "the [n]amed [i]nsured shown in the [d]eclarations [that is, the corporation]"; (internal quotation marks omitted) id., 540, 542; and (2) "[b]odily injury" as "bodily injury, sickness or disease sustained by a person including death resulting from any of these. . . ." (Internal quotation marks omitted.) Id., 540. The endorsement defined a "[f]amily member" as "a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child." (Emphasis omitted; internal quotation marks omitted.) Id., 541–42. Moreover, one of the exclusions listed in the endorsement was "[b]odily injury sustained by you or any family member while occupying or struck as a pedestrian by an uninsured motor vehicle that you own." (Emphasis omitted; internal quotation marks omitted.) Id., 541.

The plaintiff, in her individual capacity and as executrix of the decedent's estate, sought to recover underinsured motorist benefits pursuant to the defendant's policy. Id., 538. After submitting the matter to arbitration, the parties agreed to have an arbitration panel determine the threshold issue of coverage, whereupon a majority of the panel determined that the decedent was not entitled to uninsured motorist coverage under the policy. Id., 538–39. Upon application, the trial court vacated the arbitration award. Id., 539. The defendant appealed to this court, whereupon our Supreme Court transferred the appeal to itself. Id.

On appeal, our Supreme Court affirmed the trial court's judgment, concluding that the defendant's policy was ambiguous. Id., 539, 546. First, our Supreme Court concluded that the use of the term "[y]ou" as one of the definitions of an "[i]nsured" in § B.1 of the uninsured motorist endorsement was "nonsensical because a corporation cannot be compensated for 'bodily injury,' which is the subject matter of the coverage. Laypersons reading the coverage in relationship to the bodily injury coverage could have concluded that the '[y]ou' in the policy was referring to the shareholders of this small family

owned and operated corporation. This is further highlighted by [the exclusions section of the endorsement], which provides that '[t]his insurance does not apply to . . . "[b]odily injury" sustained by you or any "family member" while "occupying" or struck as a pedestrian by an "uninsured motor vehicle" that you own.' . . . In addition . . . the endorsement specifically provides that '"[f]amily member"' means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child. . . . The uninsured motorist coverage under both §§ B.1 and B.2 are inapposite to the situation in which a corporation is issued an uninsured motorist endorsement, but, rather, are consistent with one seeking coverage for shareholders of a family corporation. . . . As a matter of law . . . the interplay between the provisions in the . . . endorsement created a situation too misleading to be anything other than ambiguous." (Citations omitted; emphasis omitted.) Id., 546–47. Additionally, our Supreme Court concluded that the definitions of an "[i]nsured" in §§ B.1 and B.2 were irreconcilable and declined to construe the terms in a manner that would have rendered § B.1 superfluous. Id., 547–48. In summary, our Supreme Court "conclude[d] that the individual oriented language, combined with the family oriented language, interspersed throughout the . . . endorsement provided to the corporation injected confusion and uncertainty into the coverage afforded by the policy. If an insurer uses language that is ambiguous, any uncertainty caused by that ambiguity will be resolved against the insurer. . . . Put simply, the defendant should not have used an uninsured motorist endorsement containing language oriented toward individuals and family members when the named insured was a corporation."[15] (Citation omitted; emphasis omitted.) Id., 548–49.

We observe that both *Ceci* and *Hansen* cautioned against the use of coverage terms applicable to individuals

---

[15] In *Agosto* v. *Aetna Casualty & Surety Co.*, 239 Conn. 549, 687 A.2d 1267 (1996), a companion case of *Hansen* involving a "practically identical" uninsured motorist endorsement of an automobile insurance policy issued to the state; id., 551; our Supreme Court applied the reasoning

and/or family members in uninsured motorist endorsements of commercial automobile insurance policies. See *Ceci* v. *National Indemnity Co.*, supra, 225 Conn. 174–75 ("[b]ecause corporations do not have families, uninsured motorist endorsements containing family member language should not be appended to business automobile liability insurance policies"); *Hansen* v. *Ohio Casualty Ins. Co.*, supra, 239 Conn. 548–49 ("[p]ut simply, the defendant should not have used an uninsured motorist endorsement containing language oriented toward individuals and family members when the named insured was a corporation"). Nevertheless, we do not construe *Ceci* and *Hansen* to instruct that the use of individual and/or family oriented language in an uninsured motorist endorsement of a commercial automobile insurance policy creates ambiguity per se.

Indeed, this court previously has construed terms in an uninsured motorist endorsement of a commercial automobile insurance policy substantially similar to the language at issue in the present case to be clear and unambiguous. In *Puente* v. *Progressive Northwestern Ins. Co.*, 181 Conn. App. 852, 188 A.3d 773, cert. denied, 329 Conn. 913, 186 A.3d 1170 (2018), the endorsement for uninsured motorist coverage in the policy issued by the defendant insurer defined an insured differently depending on the classification of the policy's named insured. Id., 855, 859. The endorsement provided as follows:

"1. Insured means:

"a. if the named insured shown on the [d]eclarations [p]age is a natural person:

"(i) you or a relative;

"(ii) [any] person occupying your insured auto . . . and

"(iii) any person who is entitled to recover damages covered by this endorsement because of bodily injury sustained by a person described in (i) or (ii) above; or

of *Hansen* to conclude that the defendant insurer "should not have issued an uninsured motorist endorsement containing language referring to individuals and family members when the named insured was a governmental entity." Id., 552.

"b. if the named insured shown on the [d]eclarations [p]age is a corporation, partnership, organization, or any other entity that is not a natural person:

"(i) any person occupying your insured auto . . . and

"(ii) any person who is entitled to recover damages covered by this endorsement because of bodily injury sustained by a person described in (i) above." (Internal quotation marks omitted.) Id., 859.

Additionally, the policy defined "[y]ou" and "your" to mean "the named insured shown on the declaration page," which was the plaintiff's company. (Internal quotation marks omitted.) Id., 858.

This court concluded that the defendant's policy unambiguously provided that the named insured was the plaintiff's company, not the plaintiff, determining that (1) "the terms 'you' and 'your' in the policy refer[red] to [the plaintiff's company] rather than the plaintiff personally . . . [and (2)] the section of the policy that uses the terms 'you or a relative' [did] not create ambiguity because the policy clearly provide[d] that those terms appl[ied] only if the named insured on the declarations page [was] a natural person." Id., 860. This court also rejected the plaintiff's reliance on *Ceci* to contend that the policy was ambiguous; id.; concluding that "[t]he policy [at issue], unlike that in *Ceci*, [was] clear and unambiguous and provide[d] that the named insured [was the plaintiff's company] and that if the named insured [was] not a natural person then the policy only cover[ed] individuals who [were] occupying the insured vehicle."[16] Id., 861.

We conclude that the language of the Ohio Security policy does not suffer from the same deficiencies that rendered the policies in *Ceci* and *Hansen* ambiguous. The uninsured motorist endorsement expressly provides two sets of definitions of an "[i]nsured," delineated separately

---

[16] This court also rejected an argument by the plaintiff that the policy was ambiguous because it improperly identified the named insured as a corporation, rather than as a limited liability company. *Puente* v. *Progressive Northwestern Ins. Co.*, supra, 181 Conn. App. 861.

in §§ B.1 and B.2, with the applicable definition to be determined by the classification of the named insured. Section B.1 clearly applies when the named insured is an individual, whereas § B.2 clearly applies when, as is the case here, the named insured is a corporation. We discern no reasonable reading of §§ B.1 and B.2 that renders them irreconcilable. Indeed, the only substantive difference between §§ B.1 and B.2 is that § B.1 expands the definition of an "[i]nsured" to include the named insured and any family members when the named insured is an individual. Moreover, unlike in *Ceci* and *Hansen*, the term "you" is not utilized in defining an "[i]nsured." Cf. *Ceci* v. *National Indemnity Co.*, supra, 225 Conn. 171; *Hansen* v. *Ohio Casualty Ins. Co.*, supra, 239 Conn. 541. Insofar as § B.1.a includes individual and family member oriented language, the use of such language does not create any ambiguity because it expressly applies only when the named insured is an individual and, therefore, has no application when § B.2 governs. See *Puente* v. *Progressive Northwestern Ins. Co.*, supra, 181 Conn. App. 860 (phrase " 'you or a relative' " did not create ambiguity in uninsured motorist endorsement of automobile insurance policy when phrase applied only if named insured was natural person). In short, *Ceci* and *Hansen* do not undermine the court's conclusion that the endorsement is clear and unambiguous in defining an "[i]nsured."[17]

We also reject the plaintiffs' contention that the definition of an "[i]nsured" contained in § B.2.b of the

---

[17] We further observe, as the court acknowledged in its decision, that the definition of an "[i]nsured" in the uninsured motorist endorsement substantively tracks the language of a form endorsement for commercial automobile insurance policies issued by the Insurance Services Office (ISO), which "is the industry trade group that drafts form policies for the American liability insurance market." *Turek Enterprises, Inc.* v. *State Farm Mutual Automobile Ins. Co.*, 484 F. Supp. 3d 492, 496 n.4 (E.D. Mich. 2020); see J. Berk & M. Jainchill, supra, § 2.10.1, pp. 267–69. According to the authors of "the leading treatise regarding Connecticut's uninsured motorist law"; *Vitti* v. *Allstate Ins. Co.*, supra, 245 Conn. 179 n.9; "[t]he policy 'ambiguity' of the *Agosto* [v. *Aetna Casualty & Surety Co.*, 239 Conn. 549, 687 A.2d 1267 (1996)] and *Hansen* courts is addressed by [ISO's form] endorsement." (Footnote omitted.) J. Berk & M. Jainchill, supra, § 2.10.1, p. 269.

uninsured motorist endorsement is ambiguous. Pursuant to § B.2.b, an "[i]nsured" means "[a]nyone for damages he or she is entitled to recover because of bodily injury sustained by another insured." (Internal quotation marks omitted.) This provision is clear and unambiguous in extending coverage to anyone entitled to recover with respect to derivative claims, including bystander emotional distress and loss of consortium. See *Hansen* v. *Ohio Casualty Ins. Co.*, supra, 239 Conn. 538 n.3 (plaintiff's claim of bystander emotional distress was predicated on provision of policy's uninsured motorist endorsement defining insured to mean "[a]nyone for damages he or she is entitled to recover because of bodily injury sustained by another insured" (internal quotation marks omitted)); *Reynolds* v. *Connecticut Interlocal Risk Management Agency*, Docket No. CV-09-5024679-S, 2010 WL 2383895, *3 (Conn. Super. May 5, 2010) (plaintiff asserting loss of consortium claim qualified as insured pursuant to policy language defining insured to include "[a]nyone for damages he or she is entitled to recover because of bodily injury sustained by another insured" (emphasis omitted; internal quotation marks omitted)). We discern no logical reading of § B.2.b that supports the plaintiffs' proposition that the provision "is confusing and ambiguous [and] seemingly covers anyone with a bodily injury," including themselves.

In sum, we conclude that the court correctly determined that the plaintiffs were not insureds entitled to uninsured motorist coverage pursuant to the Ohio Security policy, and, therefore, the court properly rendered judgment in Ohio Security's favor on counts six and eight of the plaintiffs' amended complaint.

The judgment is reversed with respect to counts five and seven of the plaintiffs' amended complaint and the case is remanded for further proceedings on those counts according to law; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.